No. 26,747.

T. J. KIRBY, *Appellee*, v. THE MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. CARRIERS—*Transportation of Live Stock—Negligent Delay—Market Conditions and Practices Govern.* In case of negligent delay by a carrier in delivering live stock transported to the Kansas City market, market conditions and practices govern, rather than rule hours for opening and closing the market, and delivery in fact too late for the market of the day of arrival is equivalent to delivery for the next day's market.

2. SAME—*Transportation of Live Stock—Notice of Injury.* An interstate live-stock shipping contract provided for written notice to carrier of visible injury to stock before removal from carrier's possession or mingling with other stock. *Held,* presence of a representative of carrier at the unloading will not obviate compliance with the contract.

3. TRIAL—*Cure of Errors.* The proceedings considered, and *held,* certain trial errors affecting amount of recovery were cured by verdict for proper items of damages duly proved.

Appeal from Labette district court; WILLIAM D. ATKINSON, judge. Opinion filed June 12, 1926. Modified and affirmed.

*W. W. Brown, C. E. Pile* and *E. L. Burton,* all of Parsons, for the appellant.
*A. D. Neale,* of Chetopa, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages resulting from delay in transporting live stock to the Kansas City market. Plaintiff recovered, and defendant appeals.

The transportation was interstate, and was governed by federal law. The petition was an old-style, common-law petition for negligent delay. Defendant sought to introduce in evidence the shipping contracts as a part of the cross-examination of plaintiff. The

Appeal and Error, 4 C. J. pp. 1014 n. 34, 1043 n. 45, 1045 n. 50. Carriers, 10 C. J. pp. 56 n. 36; 315 n. 67, 338 n. 52.

court held the contracts were matters of defense, and they were not admitted until regularly offered by defendant. Since the petition counted on an interstate shipment, the shipping contracts were not mere matters of defense, but were fundamental to the relation of shipper and carrier. To base recovery on the common law was to claim discrimination in favor of plaintiff, something which congress has taken much pains to eradicate. (*Abell v. Missouri Pac. Rld. Co.*, 120 Kan. 362, 243 Pac. 1031.) Since the contracts finally came into the case and it was determined with reference to them, the error in treating them as matters of defense was not prejudicial.

The petition contained two causes of action, one based on a shipment made in November, 1923, and one based on a shipment made in February, 1924. Each cause of action was predicated on the fact the shipment arrived too late for the market on the day of arrival, and plaintiff was obliged to hold his stock in the yards for the next day's market. The November shipment was unloaded at 12:10 p. m., and was on the market about 1 p. m. The February shipment was unloaded at 10:40 a. m., and was on the market about noon. The rule is that the market is open from 8 a. m. to 3 p. m. In actual practice, market transactions are concluded in the forenoon, and most of them early in the forenoon. Buyers fill their orders, and leave the yards. Only traders are left, and generally stock must be held over or sold at a sacrifice. In case of negligent delay in delivery, market conditions and practices govern rather than rule hours, and injurious consequences of delivery in fact too late for market on the day of arrival, are to be regarded as consequences of delivery for the next day's market.

The November shipment included hogs and cattle. The petition made the following claim for damages for holding 129 head of hogs from November 22 to November 23:

"25¢ per cwt. decline on 129 hogs, weighing 14,190 pounds.............. $35.47
5 pounds per head shrink on 129 hogs, at $5.25..................... 33.86
5 bushels extra feed, account holding over........................ 6.50"

One hundred head of hogs were sold on arrival. There could be no shrinkage for holding until the next day hogs sold on the day of arrival. The price of those hogs was not cut because they were stale and the proof was the feed was given to the entire lot of 129 head. A motion to withdraw the evidence relating to damages occasioned by holding over 100 head of hogs was denied.

Kirby v. Missouri-K.-T. Rld. Co.

The petition made the following claim for damages for holding the November cattle from the day of arrival until the next day:

"25¢ per cwt. decline from the morning market of the 22d to morning
    market of the 23d, 23,610 pounds............................ $59.02
  25¢ per cwt. decline, account stale condition........................ 59.02
225 pounds alfalfa, extra feed..................................... 3.94
  6 bushels of corn .............................................. 7.80
40 pounds per head shrink 24 cattle, at $6.50 per cwt................ 62.40"

There was no decline in market price from the morning market of the 22d to the morning market of the 23d, and the shrinkage was only twenty-five pounds per head.

The February shipment was a carload of cattle. The claim stated in the petition for holding these cattle from February 27 to February 28 follows:

"To extra shrink of 25 pounds per head on said cattle, 65 head, to wit,
  1,625 pounds, at $5.68 per hundred.............................. $92.30
To 25 cents decline, account stale condition of said stock, on 49,090
  pounds, the weight of cattle ................................... 122.72
To extra hay, 400 pounds, and 160 pounds of alfalfa, and four bales of
  straw ....................................................... 10.80
To one cow, crippled through the carelessness and negligence of de-
  fendant ..................................................... 12.50"

The shipment comprised fifty-six stockers and nine cows, one of them being a cow crippled in transit. The cows were all sold on arrival, and there could be no damages for holding them until the next day. They did not shrink, or become stale in appearance, or consume extra feed. A motion to strike out the evidence relating to damages occasioned by holding over the cows, was denied.

The shipping contract contained the following provision:

"Sec. 4. (c) Before the live stock is removed from the possession of the carrier or mingled with other live stock, the shipper, owner, consignee or agent thereof shall inform in writing the delivering carrier of any visible or manifest injury to the live stock."

Written notice was not given of the visible injury to the crippled cow. The court instructed the jury as follows:

"You are instructed that, if you find and believe from the evidence herein that the cow of said shipment was crippled, as alleged in the first cause of action of plaintiff's amended petition, and for which plaintiff claims damages in the sum of $12.50; and you further find and believe from the evidence that a representative of defendant was present at the unloading, no notice to defendant of such injury would be necessary."

The instruction was applicable to contracts merely requiring notice to the carrier, but was not applicable to contracts requiring written notice.

The court denied a request for an instruction framed by defendant relating to measure of damages, and gave an instruction on that subject, of which defendant complains.

It is not necessary to discuss the assignments of error bearing upon the subject of amount of recovery. The jury allowed nothing for the 100 head of hogs, or for feeding hogs, or for market decline in price of the November cattle, and allowed but twenty-five pounds per head shrinkage of those cattle. The jury allowed nothing for eight of the nine head of cows in the February shipment, but did allow $12.50 for the crippled cow. Aside from the crippled cow, the items included in the verdict were, shrinkage in weight and depreciation in price on account of staleness of the stock held over, and feed of the cattle held over. These items were duly proved, and defendant does not specifically complain of them. According to the court's computation they amounted to $319.42. Adding to this sum the damages on account of the crippled cow, $12.50, the total is $331.92, which is ten cents more than the verdict. The difference may be accounted for by the part played in the computation by third-place decimals.

The contention that plaintiff was not the proper party to sue is unsound, and other matters discussed in plaintiff's brief do not require special mention.

The judgment of the district court is reduced, by deducting the sum of $12.50, to $319.32. As modified, the judgment is affirmed.